THOMAS *v*. THOMAS.

Opinion delivered January 8, 1917.

1. GUARDIAN AND WARD—EXPENDITURES FOR WARD.—The probate court is without discretion to approve the expenditures of a guardian for the maintenance and education of his ward, so far as they exceed the income of the ward's estate, unless such expenditures have been made under the direction of the court.

2. GUARDIAN AND WARD—INTEREST ON WARD'S MONEY.—Where the ward's land is sold by order of the probate court, the guardian, after receiving the money, has a reasonable time to lend the money before he is chargeable with interest.

3. GUARDIAN AND WARD—INTEREST.—Where nothing in the record shows that a guardian could have loaned his ward's money at a rate of interest higher than 6 per cent, the guardian will not be charged with a rate higher than that sum.

Appeal from Clay Chancery Court, Western District; *Chas. D. Frierson*, Chancellor; reversed.

*J. L. Taylor*, for appellant.

1. The court erred in dismissing the complaint. It alleged fraud and is sustained by proof. 63 Ark. 450; 77 *Id*. 351. . The case 181 S. W. 908, upon which the chancellor relied is not decisive, as no sufficient fraud was alleged. The charges for board, clothing and doctor's bill was not a just or legal claim. 63 Ark. 159; *Id*. 450. Gross frauds sufficient to wipe out the entire estate of the minor were shown. Cases *supra*. See also 24 Ark. 574. No previous order had been obtained from the probate court and the allowance for board, etc., was for a time before the guardian was appointed or the money received.

2. For a guardian to obtain credits for sums not expended for the benefit of his ward is a fraud for which his final settlement will be set aside in equity and restated. 63 Ark. 450.

3. Interest should have been charged at 10 per cent.

*G. B. Oliver*, for appellee.

1. The demurrer was properly sustained. The acts constituting the fraud must be specifically alleged and proved. 77 Ark. 351; 181 S. W. 908.

2. If sufficiently alleged, the fraud was not proven nor supported by the evidence. 63 Ark. 450. Chancery courts do not correct mere errors of the probate court; they only set aside judgments procured by fraud. 99 Ark. 529; 42 *Id*. 186; 97 *Id*. 459; 34 *Id*. 63.

3. The accounts had been settled and the balance due paid into court and the guardian and bondsmen discharged. At least his bondsmen are not liable.

4. There is no equity in plaintiff's claim.

HUMPHREYS, J. Marion Thomas became the guardian of his son, the appellant, on the first day of April, 1905. W. D. Polk and H. H. Williams signed the guardian's bond as sureties. Ivan Thomas, the appel-

lant, was eleven years of age at the time, and his entire estate consisted of an undivided interest in the S. W. ¼ of the N. W. ¼, Sec. 10, Twp. 21, R. 4, E. in Clay county, Arkansas. On application of the guardian the land was sold on November 27, 1905, on three months' credit. The portion of purchase money due appellant amounted to $203.35. On the 14th day of February, 1906, the guardian filed his first and final settlement, in which he took credit for $160 by voucher No. 3, representing an allowance made by the probate court to the guardian on the 14th day of February, 1906, for board, clothing and doctor's bills for the years 1902, 1903, 1904 and 1905. On the same date, the probate judge restated the account filed, and found the guardian owed appellant $8.21, and directed that the guardian and his bondsmen be discharged upon the payment of said sum into court. On the 25th day of April following, the guardian paid said amount to the clerk of the court. On July 23, 1906, the guardian presented a claim to the court for clothes and board in the sum of $8.21 from the fourth Monday of April to the fourth Monday in July, which account was allowed and ordered paid. The clerk then paid said sum to the guardian.

Appellant brought this suit in equity against his guardian, Marion Thomas, and his bondsmen, H. H. Williams and W. D. Polk, to falsify and surcharge the account, alleging "that the guardian failed to charge himself with interest on the sum collected from the sale of said real estate from the date of sale until his final settlement; that he took credit for $160 for board and clothing and doctor's bills and credit for $8.21 for board and clothing; that the item of $160 was greatly in excess of the income of the estate; that said sum was never paid out or expended for appellant's benefit; and that said guardian never intended to make any charge on these items at the time they were furnished; that during the years 1902–3–4 and 5 the appellant was living with his guardian, who was his father, as a member of his family, receiving support from said defendant

and rendering services required by parents of their children, which services so rendered by appellant were sufficient compensation for his board, clothes, etc.; that these facts were fraudulently concealed from the probate court at the time he presented his claim for same." An answer was filed denying the material issues, which answer contained a demurrer to the complaint. The cause was heard on the pleadings and depositions. The chancellor dismissed the bill and this cause is here on appeal.

(1) Section 3792 of Kirby's Digest provides that the guardian shall not be allowed more than the clear income of the estate for the maintenance and education of the ward unless the expenditure is directed by the probate court. In construing this statute, this court said in the case of *Campbell* v. *Clark*, 63 Ark. 450, that "The language of this statute could not well be made stronger than it is, and we are of the opinion that it was intended to be, and is, mandatory. This statute, in our opinion, takes from the probate court the discretion to approve the expenditures of a guardian for the maintenance and education of his ward, so far as they exceed the income of the ward's estate, unless such expenditures have been made under the direction of the court." It was also said in that case that if the guardian obtained credits in his final settlement for sums which he had not expended for the benefit of his ward, it would be such a fraud as would warrant a court of chancery in restating and correcting such settlement. In the case of *Nelson* v. *Cowling*, 77 Ark. 351, this court held that if a guardian did not account for money he had received as guardian that it was within the jurisdiction of the chancery court on complaint to correct the account in that particular.

The undisputed evidence in this case shows that the guardian collected $203.35 from the estate of appellant and that he took credit for $160 for board, clothing, etc., which he had not expended for appellant out of the money so collected. This credit for board and clothing covered a period almost entirely prior to his

appointment as guardian for his son. At that time appellant was living at home with his father in the relationship of parent and child; the father had no intention whatever of charging his son any board for the years 1902, 1903, 1904 and 1905. The charge was clearly an afterthought and had the effect of absorbing the entire estate of the boy. This could not be done without first obtaining an order from the probate court. It was clearly a fraud in the law which courts of chancery will recognize.

(2) It is contended that the guardian should be charged with interest from November 27, 1905, the date of the sale of the land, until April 25, 1906. We cannot agree with counsel for appellant in this contention. In the first place, it is not shown that the guardian received any interest from the purchaser of the real estate at the time the purchase money was paid. The court ordered the land sold on a credit of three months and there is no showing that any interest was charged on the purchase price. After receiving the money, the guardian would have a reasonable time to lend the money before he would be chargeable with interest. He did not receive the money until February 14, 1906, the date he made his final settlement and procured his discharge.

It is also contended that the bondsmen are not responsible for $8.21 charged by the guardian, Marion Thomas, for board and clothing from the first Monday in April, 1906, to the first Monday in July, 1906, for the reason that this credit was obtained by the guardian after he and his bondsmen were discharged. They are correct in this contention.

(3) It is contended by appellant that whatever balance is found due, after the account is corrected, from the guardian and his bondsmen to appellant should bear 10% interest from the date of final settlement to the present time. There is nothing in the record to show that this money was loaned by the guardian for 10%. In the case of *Campbell* v. *Clark*, *supra*, the guardian was charged only 6% per annum

from the date of final settlement. There is nothing in this record showing that the guardian could have loaned the money at a higher rate of interest than the legal rate. This court held in the case of *Parker* v. *Wilson*, 98 Ark. 553, that the guardian should not be charged with a greater rate of interest than 6%, the legal rate, unless it appeared from the evidence that the guardian could have loaned the money on good security at a higher rate of interest. In the instant case the guardian did not loan the money at all, but used it believing it was his own after he and his bondsmen had been discharged.

On final settlement, it appeared that the guardian was indebted to his ward, the appellant herein, in the sum of $8.21, which amount was paid into the court. Without authority of law he obtained this amount from the clerk of the court and, of course, is indebted to appellant in that sum in addition to the sum of $160 for which he wrongfully obtained a credit. His bondsmen, two of the appellees herein, are responsible jointly with him for the item of $160. The decree herein must be reversed, and a decree will be entered here against the appellees, Marion Thomas, W. D. Polk and W. W. Williams, for $160 with interest at the rate of 6% per annum from the 14th day of February 1906, until paid, together with all costs, and a decree will be rendered against the guardian, Marion Thomas, for $8.21, together with interest thereon at the rate of 6% per annum from February 14, 1906, until paid.