EASON *v.* HIGHLEY.

Opinion delivered June 2, 1930.

*O. E. Williams,* for appellants.

*W. A. Utley,* for appellees.

HART, C. J., (after stating the facts). It is the settled law of this State that where an estate comes to an intestate by gift or devise, without consideration other than that of blood, it is an ancestral estate; but that, if any part of the consideration is a valuable one, the estate acquired is a new acquisition. The court has held frequently that the purpose of the statute creating ancestral estates was to keep such estates in the line off blood from which they came, and that blood must be the only consideration by which they are acquired, whether by devise or gift. Hence, if an estate is ancestral and comes to the intestate by gift, devise, or descent, on the part of the father or mother, it goes to the heirs of the intestate who are of the blood of the ancestor from whom it came. If, on the other hand, the land is a new acquisition, on the death of the mother after that of Van Franklin Highley, the land passed to his brothers off the half blood. *Martin* v. *Martin,* 98 Ark. 93; *Hill* v. *Heard,* 104 Ark. 23; *McElwee* v. *McElwee,* 142 Ark. 560; *Earl* v. *Earl,* 145 Ark. 559; *Beard* v. *Beard,* 148 Ark. 23; and *Carter* v. *Carter,* 129 Ark. 7 and 573.

It is contended by counsel for appellants that a preponderance of the evidence shows that the lot in controversy was an ancestral estate. They point to the fact that the records of the bank show that Mrs. Alice L. Highley had on deposit in the bank the sum of $1,400 on the day that the .deed to Van Franklin Highley was executed. They state that this fact, coupled with the other circumstances attending it, show that the whole consideration was paid by the mother. It is true, as contended by appellants, that the pension attorney testified that, under

the laws of the United States, the pension was received by Mrs. Alice L. Highley for herself and her minor son, but a consideration of the whole testimony of the pension attorney shows that he was referring to the amount received after September 27, 1916, at which time the minor became sixteen years of age. The mother had applied for and received a pension commencing November 16, 1911, and from that time until her minor son became sixteen years of age, on September 27, 1916, it appears that she received the pension, both for herself and for her minor son. In any event, she so considered the matter and so reported it to the probate court. She was the guardian of her minor son, and in her final settlement, which was filed on the 2d day of March, 1920, she charged herself with the sum of $752 on account of the minor's pension. She also asked for credit from the death of his father up to September 27, 1916, for funds expended in his education and maintenance. This shows that she regarded his claim for minor's pension as belonging to him, and that she must account for it to the probate court. It is true that her account was approved by the probate court, but this does not end the matter. She had not obtained any previous order of the court allowing her to expend this sum for the support and maintenance of her minor son.

It is the established law in this State that the probate court cannot approve the expenditures of a guardian for the maintenance and education of his ward in so far as they exceed the income of the ward's estate, unless such expenditures have been under the direction of the court. *Campbell* v. *Clark*, 63 Ark. 450; *Thomas* v. *Thomas*, 126 Ark. 579; and *Diffie* v. *Anderson*, 137 Ark. 151. There is nothing in the record tending to show that there had been any previous order of the probate court directing Mrs. Highley to expend any part of the principal of her ward's estate for his education and maintenance. On the other hand, such proof as the record contains on the point was, that the son, while in poor health, worked during the

week-ends in delivering groceries and endeavoring to earn what he could to help support himself and his mother. She earned her own support by daily labor, but there is nothing to show that she was authorized to expend any part of her ward's money towards his education and support.

The testimony of Mrs. Hutcheson, who deeded the lot to the minor, was that his mother told her that it was to be paid for her out of the pension money belonging to herself and to her minor son. While the mother had on deposit in the bank in her own name the amount, which she paid for the lot, still when her daily deposit slips in the bank for the time previous to the execution of the deed are examined, we must come to the conclusion that it required the pension money of her son to make out the $1,400. Another witness testified, that when the mother told him in the presence of her son that she wished to purchase them a home but did not have sufficient money for that purpose, her son replied that he wished his pension money to be used in part payment of the purchase price of a home for them. Hence we are of the opinion that a preponderance of the evidence is that a part of the purchase price of the land in question was paid by the minor; and, under the principles of law above set forth, the estate was a new acquisition, and, upon the death of the mother after that of the minor, it descended to his half brothers as his heirs at law.

There is nothing in the case of *United States Fidelity & Guaranty Co.* v. *Hicks,* 180 Ark. 118, 21 S. W. (2d) Ark. 421, which conflicts with the views we have expressed here. In that case, the record showed that the United States had allowed the mother a monthly pension of $20 for the support of her ward, and that the probate court had allowed her a monthly sum of $25 for the same purpose. The court also said that the testimony showed that, after the allowance was made, the guardian supported and maintained her ward and spent more than the sum allowed upon her ward. So, it will be seen that the

facts in that case showed that an allowance had been made in the probate court for the support and maintenance of the ward, and that the mother had expended more for that purpose than the sum allowed by the probate court, or allowed as a pension for the minor by the United States; but was only permitted to hold as her own money the amount so allowed her.

It follows that the decree of the chancery court was correct, and must be affirmed.