# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1766

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Western District of Arkansas. |
| Hollis Wayne Fincher, | * |
| | * |
| Appellant. | * |

_____

Submitted:  December 17, 2009
Filed:  February 1, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Hollis Wayne Fincher appeals from the district court's[1] order requiring him to reimburse the United States Treasury $8,357.55 for the legal services provided to him under the Criminal Justice Act, 18 U.S.C. § 3006A.  We affirm.

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

I.

Fincher was charged with possessing illegal firearms, and he requested the appointment of an attorney based on his financial inability to retain counsel. Fincher executed a financial affidavit, wherein he stated that he owned his home and 120 acres of real estate in Fayetteville, Arkansas, which had unknown value. Fincher did not list certain other assets, including numerous firearms, machinery, and tools. The district court appointed counsel, who later withdrew because Fincher had retained other counsel.

Fincher was convicted of one count of possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and one count of possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Following his conviction, Fincher informed the district court that he no longer had counsel and requested that counsel be appointed to represent him, which was done.

Fincher's conviction subjected him to a fine of up to $250,000. Before he was sentenced, Fincher executed a quitclaim deed conveying the 120 acres of real estate to his daughters and reserving a life estate in the property for himself and his wife. Fincher's civil attorney informed the U.S. Attorney's Office that Fincher had transferred the property, but did not inform the court of that fact. Thereafter, Fincher was sentenced to concurrent seventy-eight month sentences and was fined $1,000. The district court imposed the below-guidelines-range fine under the belief that Fincher had no significant assets.

After sentencing, Fincher moved for release on bond pending the designation of the facility at which he would serve his sentence. The district court granted the motion, setting bond at $100,000. When Fincher and his daughters pledged the 120-acre property to secure the bond, the district court discovered that the property had significant value and that Fincher had conveyed the property to his daughters for

-2-

consideration in the amount of "One Dollar ($1.00) and other good and valuable consideration." D. Ct. Order of July 27, 2007, at 4 n.2.

The district court subsequently held an evidentiary hearing to determine whether Fincher had been eligible for court appointed counsel. Fincher testified that real estate near his farm had sold for $2,000 to $4,000 per acre. The court appointed an expert to appraise the property, who determined that the property was worth $455,000, a value that was consistent with Fincher's estimate. The district court found that Fincher was financially able to obtain counsel and ordered Fincher to reimburse the United States Treasury $8,357.55.

On appeal, we affirmed Fincher's conviction and remanded the issue of his eligibility for court appointed counsel to the district court for further inquiry. We issued the following instructions:

> [W]e remand this issue to the district court for further consideration of whether Fincher's wife has any ownership in the property and, if so, whether that affects Fincher's ownership of the property or the application of the Arkansas Homestead Exemption. Specifically, the district court must consider whether the entire 120 acres of real estate is protected by the Homestead Exemption, making Fincher eligible for court appointed counsel despite his ownership of the property, or whether the exemption protects only a portion of the real estate. . . . Additionally, the district court should consider whether Fincher has the current ability to reimburse the United States Treasury for the legal services he received in light of the transfer of real estate to Fincher's daughters.

United States v. Fincher, 538 F.3d 868, 877-78 (8th Cir. 2008) (internal citations omitted) (Fincher I).

Following an evidentiary hearing and the submission of post-hearing briefs, the district court held that "Fincher is not now, nor has he ever been at any time material

to this proceeding, financially unable to obtain counsel to represent him." D. Ct. Order of Feb. 26, 2009, at 14. The district court determined that the quitclaim deed conveying the property to Fincher's daughters was voidable as a fraudulent transfer, that Mrs. Fincher had an inchoate dower interest and a homestead interest in the property, and that the Arkansas Homestead Exemption allows one homestead per married couple. The district court found that Fincher would be able to pay for the legal services he received because the homestead exemption protected only eighty of Fincher's 120 acres. The court found that even if Mrs. Fincher refused to relinquish her dower interest in the forty acres of non-homestead land, sale of the burdened property would cover Fincher's legal fees. The court also determined that Fincher could have sold other assets to pay for his legal fees, including his firearms, machinery, and tools, which had a total value of between $8,500 and $14,500.

## II.

The Criminal Justice Act establishes the framework for ensuring that individuals who are financially unable to afford defense counsel are provided counsel as required by the Sixth Amendment. Fincher I, 538 F.3d at 875; United States v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999). A person is eligible for court appointed counsel if, after an appropriate inquiry, the court is satisfied that the person is "financially unable to obtain counsel." 18 U.S.C. § 3006A(b). The defendant bears the burden of establishing that he or she is financially unable to obtain counsel, but financial inability to pay does not mean indigence or destitution. Fincher I, 538 F.3d at 875; Brockman, 183 F.3d at 897.

Our review of the district court's determination is a three-step process: (1) whether the district court conducted an appropriate inquiry into the defendant's financial eligibility, (2) whether the district court correctly determined the defendant's financial eligibility, and (3) whether the district court erred when it weighed the interests of justice. Fincher I, 538 F.3d at 876; United States v. Parker, 439 F.3d 81,

92-93 (2d Cir. 2006). Now that the record has been fully developed, we are able to complete the final two steps of the review process.

## A.

Fincher argues that his only substantial asset is the life estate he holds in joint tenancy with his wife and that the district court erred in finding that his conveyance of the property to his daughters was fraudulent and voidable. He contends that Arkansas law grants each spouse a personal right to a homestead exemption and thus the entire 120 acre property is exempt from legal process. According to Fincher, even if the conveyance is voidable and the homestead exemption protects only part of the property, the district court erred in finding that he could sell the non-homestead land because it is subject to Mrs. Fincher's dower interest and it lacks legal access.

## 1.

The record supports the district court's finding that Fincher acted with fraudulent intent when he conveyed the property to his daughters and reserved a life estate for himself and his wife. Under Arkansas law, Fincher's transfer of the property is fraudulent as to the creditor (1) if he made the transfer with "actual intent to hinder, delay, or defraud any creditor" or (2) if he made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer" and reasonably should have believed that he would incur debts beyond his ability to pay. Ark. Code Ann. § 4-59-204. The evidence showed that Fincher was trying to divest himself of the property so that it would be unavailable to pay a debt (a criminal fine) to a creditor (the United States). Fincher was facing a fine that could have been as much as $250,000, and he admitted that he wanted to get the property "out of my hands." Fincher's daughter admitted that the family discussed whether the property could be taken to pay a criminal fine. The letter from the civil attorney explained that the Finchers wanted to ensure that the property remained within the family. Moreover,

Fincher did not receive a reasonably equivalent value in exchange for the transfer. The quitclaim deed recited nominal consideration and stated "NO REVENUE STAMPS REQUIRED. TRANSFER IS BY GIFT." Appellant's App. at 71. In light of this evidence, we affirm the district court's judgment that the conveyance was voidable as fraudulent because it was made with the actual intent to hinder the government from receiving payment and it was made without receiving reasonably equivalent value at a time when Fincher reasonably should have realized that he might incur a criminal fine that he would be unable to pay.

2.

Fincher argues that the 120 acres of land is exempt from legal process under Arkansas law. The Arkansas Constitution provides that "[t]he homestead of any resident of this State, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court, or to the sale under execution, or other process thereon . . . ." Ark. Const. art. 9, § 3. Arkansas code further provides,

> The homestead outside any city, town, or village, owned and occupied as a residence, shall consist of no more than one hundred sixty (160) acres of land, with improvements thereon, to be selected by the owner. The homestead shall not exceed in value the sum of two thousand five hundred dollars ($2,500), but, in no event shall the homestead be reduced to less than eighty (80) acres without regard to value.

Ark. Code Ann. § 16-66-210(c)(1). Accordingly, if a rural homestead exceeds $2,500 in value, the debtor may claim a homestead exemption by showing that the area claimed as exempt does not exceed eighty acres in size. Jones v. Dillard, 66 S.W. 202, 202 (Ark. 1902); see also In re Bradley, 294 B.R. 64, 70 (B.A.P. 8th Cir. 2003) (interpreting similar language in the urban homestead exemption); Barnhart v. Gorman, 198 S.W. 880, 881 (Ark. 1917) (same). There is no dispute that Fincher's 120 acres of land is worth more than $2,500.

-6-

Fincher contends that Arkansas law grants each spouse a personal right to a homestead exemption, and thus he and his wife can stack their eighty-acre exemptions to protect the entire 120 acres of land. Our opinion in Stevens v. Pike County Bank, 829 F.2d 693 (8th Cir. 1987) (per curiam), forecloses Fincher's argument. In Stevens, we held that Arkansas law provides only one homestead exemption to a married couple. Id. at 696 (citing Campbell v. Geheb, 523 S.W.2d 185, 187 (Ark. 1975) ("[W]hile the husband and wife are not separated, but are living together as husband and wife, there can be no such thing as a separate homestead of the wife, separate and apart from her husband.")). Fincher's arguments that Stevens was wrongly decided or distinguishable as a bankruptcy case are unpersuasive. See United States v. Moore, 572 F.3d 489, 491 (8th Cir. 2009) ("A panel of this court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc." (citation omitted)). The district court correctly concluded that Fincher and his wife may exempt only eighty acres from legal process.

3.

The district court's finding that Fincher could sell the forty acres of non-homestead property is not clearly erroneous. Mrs. Fincher holds an inchoate dower interest in the non-homestead property, which entitles her to a life estate in one third of the land upon Fincher's death. See Ark. Code Ann. § 28-11-301 (extent of dower and curtesy rights in land). We agree with the district court's finding that Mrs. Fincher would likely relinquish her dower right and that sale of the property would yield sufficient funds even if she did not. See id. § 28-11-201 (wife retains dower unless relinquished). Fincher further argues that he would be unable to sell the land because legal access thereto is disputed. Although the access issues might diminish the value of the land, we disagree with Fincher's contention that he is entitled to court appointed counsel unless he can garner a subjectively satisfactory return from the sale. By Fincher's estimate, forty acres of land is worth between $80,000 and $160,000,

and it is not clearly erroneous to find that the forty acres would yield at least $8,357.55.

## B.

Fincher argues that being required to pay for counsel would leave his family destitute. His brief describes the Finchers as "poor people who have nothing but their rocky, hardscrabble farm upon which to live." Appellant's Br. at 37. In Fincher I, we noted that "[g]enerally, cases in which a defendant's ineligibility for court appointed counsel has been affirmed are based upon the defendant's income and cash flow, not a requirement that the defendant sell his homestead to facilitate the payment of defense costs." 538 F.3d at 878 n.4. Although there is no evidence that Fincher had the income and cash flow to pay for counsel, he had substantial assets other than his homestead—including the forty acres of non-homestead property, firearms, machinery, and tools—that he could have used to pay for his defense.

## Conclusion

The judgment is affirmed.

_____